### WILSON *vs.* SMITH and others.

Where a party is authorized by an act of the legislature to erect a dam in a river previously declared a public highway, and after its erection it is *wilfully* and *intentionally* cut away by third persons, and an *immediate* and *direct injury* ensues, the remedy is by action of *trespass*, and not *case*.

For the invasion of a franchise or mere incorporeal right, the redress is by *action on the case;* but when the visible, tangible, corporeal property of a party is injured, if the injury be direct, immediate and wilful, *trespass* is the proper form of action, although the property injured may be connected with, or be the means by which the incorporeal right is enjoyed.

Where the injury is *direct* and *immediate*, proceeding from the *wilful* and *intentional* act of the defendant, the *action must be trespass;* but if the injury be attributable to *negligence*, though it be *immediate*, either *case* or *trespass* may be brought.

Where *case* is brought when the action should have been *trespass*, if the objection be taken on the trial, the plaintiff will be nonsuited.

THIS action was tried at the Livingston circuit in October, 1830, before the Hon. ADDISON GARDINER, one of the circuit judges.

The plaintiff declared in *case*, setting forth in his declaration an *act of the legislature*, authorizing him to erect a dam across the Genesee river in a certain specified manner, at a certain place, and that he erected the dam *according to the provisions of the act;* that he was in the possession and occupancy of a saw-mill *supplied with water from such dam*, and that the defendants, well knowing the premises, with an intent to injure and aggrieve him, on, &c. at, &c. with axes and other tools and implements, cut and removed a part of the timbers and other materials composing the dam, so that by the action of the water upon the breach made in the dam, a great part thereof was wholly displaced and carried away, by means whereof the plaintiff was deprived of the use of his mill for a long time, that is to say, from, &c. hitherto, and of the gains and profits which would have accrued to him thereby, and was put to great expense in repairing the dam, and was otherwise greatly injured, &c. The defendants pleaded the *general issue.* The plaintiff proved the erection of the dam, and that he owned a saw-mill supplied with water by means

thereof; that the defendants cut away some of the timbers composing the dam, made a breach in it, and that by means of the breach, the operation of his mill was suspended for several months; and was proceeding to show the amount of his damages, when the defendants' counsel interposed an objection to the *form of the action*, insisting that the plaintiff should have brought *trespass*, and not *case*, and on that ground moved that the plaintiff be nonsuited. The counsel for the plaintiff contended that the action was for *the disturbance of a franchise*, and that for such an injury the only remedy was *case*; but whether so or not, the objection to the form of action could not be taken at the trial. The judge nonsuited the plaintiff, who now moved for a new trial.

*Greene C. Bronson*, (attorney general,) for the plaintiff. The legislature, in pursuance of the right vested in them by the common law to declare navigable rivers, although above tide water, public highways, and in the assertion of the principle that the rights of the riparian owners to the stream, if navigable, are *subject to the right of the public* to use the waters of such stream as a highway for the passage of boats, rafts, &c. long since declared the *Genesee river* a public highway, and made it unlawful for any person to obstruct the navigation thereof, subjecting the offender to a penalty, and declaring the offence a misdemeanor. 2 *R. L.* 285, &c. § 1, 2. In 1826, by an act of the legislature, the plaintiff was authorized to erect a dam across the Genesee river upon certain conditions, with which he complied. He was therefore possessed of a *franchise* granted to him by the legislature, for a disturbance of which his only remedy was by *action on the case*. 3 *Black. Comm.* 237. *Comyn's Dig. tit. Action on the Case for Disturbance*, *A*, 1 to 6. *Idem. tit. Action*, *M*. 2, *and note to vol.* 1, *Day's ed. p.* 242. 15 *Johns. R.* 387. Case is the proper remedy for the disturbance of a *private road*, 14 *Johns. R.* 383; besides, where the injury is consequential, although the act be immediate, *case* lies: as where one person fixes a spout upon his own land and injures the land of another, or digs trenches in his own land by which he diverts the water of a stream, or erects a dam by which he overflows the machinery of his

neighbor's mill. 2 *Ld. Raym.* 1402. 1 *Salk.* 624, *S. C.* But if the action should have been *trespass*, the whole case appearing on the declaration, and the defendants, instead of demurring, having chosen to take issue, the plaintiff ought not to have been nonsuited. 2 *Wendell*, 158.

*J. C. Spencer*, for the defendants. The legislative permission to erect a dam, was but a modification of the statute declaring the Genesee river a public highway, and so far was a repeal of that statute, restoring to the plaintiff his rights as owner of the bank of the river, but conferring no new rights. The public had no other or greater rights in this case than they have in a road passing over the land of an individual who retains his exclusive rights for every purpose not inconsistent with the public right of way, and may maintain *trespass* for any injury to those rights. 2 *Johns. R.* 357. 15 *id.* 447. 6 *Cowen*, 579. 18 *Mass. R.* 122. 5 *id.* 125. 7 *id.* 385. Besides, here was no *franchise* granted to the plaintiff; by the very terms of the act, the authority to erect the dam was not to be construed so as to affect the rights of individuals who might be injured by the erection or continuance of the dam. *Laws of* 1826, *ch.* 208, *p.* 243. The only effect of the grant was to authorize the defendant to erect a dam, as he might have done, had the stream been his own, without grant, and to protect the dam when built from being indicted as a public nuisance; and so it was held in the similar case of *Crittenden* v. *Wilson*, 5 *Cowen*, 167. Had the plaintiff possessed no rights other than those granted by the act, it is conceded that his proper remedy would have been case, as it was held in 14 *Johns. R.* 383, cited on the other side, which was a suit by an individual who had obtained a *private road* over the land of another, and brought his action against the owner of the land for entering upon and using the road. If, then, this cannot be considered the disturbance of a franchise, it cannot be doubted but that the action should have been *trespass;* the wrong was wilful and the injury immediate, 18 *Johns. R.* 257, and the judge did right to nonsuit the plaintiff. 1 *Chitty's Pl.* 194.

NEW-YORK,
May, 1833.

Wilson
v.
Smith.

*By the Court*, SUTHERLAND, J. The action in this case should have been trespass, and not trespass on the case. The ground on which the form of the action was endeavored to be maintained at the trial, and also upon the argument at bar, was, that the right to erect the dam, for an injury to which the action was brought, was a franchise, an incorporeal hereditament ; and that for an injury to property, or right of that description, trespass will not lie. The principle here adverted to, does not apply to the case. The right to erect the dam is a franchise ; it is conferred by the legislature, the sovereign power ; it is an incorporeal right ; but the dam itself is not a franchise, nor is it incorporeal. The right to keep a ferry, or to erect a bridge, or to navigate a particular river or lake by steam, may be a franchise ; but the bridge itself, or the boats and machinery employed in the ferry, or the navigation of the river, may, notwithstanding, be the subjects of trespass. Suppose the outrage which is alleged in this case to have been committed on the plaintiff's dam, had been committed upon the Cayuga Bridge, or the steam boat navigating that lake, or the ferry boats between Albany and Greenbush, or Albany and Troy ; can there be a doubt that the individuals who perpetrated the act would be liable as *trespassers* to the individuals or companies to whom the bridge or boats belonged ? So far as the incorporeal right is invaded, the redress is by an action on the case. But when visible, tangible, corporeal property is injured, if the injury be direct, immediate and wilful, trespass is the proper form of action, although that property may be connected with, or be the means by which an incorporeal right is enjoyed.

I did not understand the counsel for the plaintiff to deny, that independently of this particular feature of the case, the action might and should have been trespass. The evidence certainly shows a very clear case of direct and immediate injury, from the wilful and intentional act of the defendants ; and in such a case I consider it well settled that the action must be trespass. This subject was very elaborately considered by this court in *Percival* v. *Hickey,* 18 *Johns.* ,*R.* 257, where all the leading cases were referred to and analized. The case of *Leame* v. *Bray,* 3 *East,* 593, was considered as

establishing the true doctrine ; and there, as in *Percival* v. *Hickey*, it was held, that where the injury is the immediate and direct result of the force originally applied or directed by the defendant, trespass is the proper remedy, whether the injury was wilful or not. In both of those cases it was the result of negligence only, and yet the actions were sustained. *Scott* v. *Shepard*, 3 *Will.* 411. 2 *Bl. R.* 892, *S. C. Ogle* v. *Barnes*, 8 *Term R.* 198. 6 *id.* 128. 5 *id.* 649. 1 *Strange*, 596, 636. *Hob.* 134. *Peake's N. P.* 107. 1 *Term R.* 569. 1 *Campb.* 497. 5 *Bos. & Pull.* 117, 446. 1 *id.* 472. Mr. Chitty states the rule correctly, as I apprehend, 1 *Chitty's Pl.* 127 ; he says, in cases of injuries arising from driving carriages or navigating ships, &c. if the injury were immediate, and be stated in the declaration to have been *wilfully* committed, *or appear to have been so on the trial, the remedy must be trespass ;* but if the injury were attributable to negligence, though it were immediate, the party injured has an election either to treat the negligence of the defendant as the cause of action, and to declare in case, or to consider the act itself as the injury, and to declare in trespass.

The cases already referred to support this distinction. It was also taken in this court in *Blin* v. *Campbell*, 14 *Johns. R.* 432, and was recognized by Judge Spencer, in delivering the opinion of the court, in *Percival* v. *Hickey*. In this case the injury was *direct* and *immediate*, and the evidence showed it to have been *wilfully committed*, and according to the authorities referred to, trespass only would lie in such a case. In trespass all the consequential damages may be recovered under a *per quod*, so that there is no necessity for departing from the appropriate form of action. The only remaining question is, whether this objection to the form of the action could be taken upon the trial. *Leame* v. *Bray*, 3 *East*, 593, is a direct authority for the position that the objection may be taken at the trial ; in that case, as in this, it was taken at the trial, and the plaintiff was nonsuited on that ground alone, and on the motion to set aside the nonsuit, no objection was started, that it was not ground of nonsuit if the action was in fact misconceived. The real objection is, that the evidence does not sustain the action, and that is in all cases ground of nonsuit. In *Ogle*

v. *Barnes*, 8 *Term R.* 191, 2, which was an action on the case, Lawrence, J. says, if it had appeared in evidence in this case that the defendants had wilfully done the act, the plaintiff must have been nonsuited.   It is in truth a variance between the declaration and the proof.

Motion for new trial denied.