(26 Misc. Rep. 720.)

WILLIAM McSHANE CO. v. HEILNER.

(Supreme Court, Appellate Term.  March 24, 1899.)

1. GUARANTY—EVIDENCE.

In an action against a third party to recover on his alleged guaranty of the payment of the price of goods sold, where plaintiff shows a payment by such defendant of the first installment, defendant is entitled to show that the only demand made on him by plaintiff was based, not on the guaranty, but on an order on defendant from the purchaser.

2. SAME.

Where, in an action on a guaranty, plaintiff testifies that defendant had promised to pay the account, and put him off, it was error to exclude evidence to contradict such statement.

3. WITNESS—IMPEACHMENT.

It is error to exclude evidence of bias tending to impeach the credibility of a witness.

Appeal from city court of New York, general term.

Action by the William McShane Company against Emanuel Heilner. Judgment for plaintiff.  Defendant appeals.  Reversed.

Argued before FREEDMAN, P. J., and MacLEAN and LEVENTRITT, JJ.

Sol. Kohn, for appellant.
Chas. De Hart Brower, for respondent.

LEVENTRITT, J.  This action was brought to recover the unpaid balance of the purchase price of certain goods alleged to have been sold to the defendant, and delivered, pursuant to his order, to one Thomas Donlon.  William McShane, the president of the plaintiff corporation, testified that on or about the 23d of March, 1895, an agreement was made with the defendant to furnish plumbing supplies for buildings then in course of erection; that on that occasion an understanding was had that the stipulated price should be paid in two equal installments, as the materials were delivered; and that in con-

nection therewith the defendant said: "Charge the goods to Donlon, and I will pay for them, and I will have a contract drawn up guarantying the payment." Two witnesses, William Grote and James J. Benson, who were present at the interview, corroborated McShane. Notwithstanding the fact that no guaranty was ever executed, the plaintiff began to furnish the goods, and after one-half had been delivered, obtained from Thomas Donlon, who held the title to the real property, an order on the defendant's firm for the payment of the first installment. This order was honored. The plaintiff claimed that thereafter the delivery was completed, and that McShane obtained from Donlon an order for the payment of the final installment, which, as he testified, the defendant, upon presentation, putting him off, promised to pay at a later date. The several orders referred to were signed in the name of Donlon by James J. Benson, his attorney in fact. On the trial, challenging the plaintiff's right to recover the amount of the second order, the defendant denied that he either purchased the goods, or guarantied their payment. The appellant contends that by the rulings of the trial court he was deprived of the right to have material testimony submitted to the jury. We shall consider several of his exceptions.

On the direct examination of the defendant he was asked: "When he [plaintiff] made a demand upon you, or asked you to pay the balance of $937.50, did he ever ask you to pay that without claiming it on the ground of having this order from Benson?" The answer was excluded under an objection that the question was "immaterial, incompetent, and in contradiction of a former witness." This was error. The case went to the jury on the single issue whether the sale was made to the defendant or to Donlon. The plaintiff claimed that the defendant had personally promised that he would pay for the goods delivered, while the defendant maintained that Donlon alone was the debtor, and that payments were made only on the latter's order, and out of funds to which he became entitled as the work progressed. The bills and receipts introduced in evidence recognized Donlon as the debtor, and Benson as his agent; and, as the orders were drawn by Benson in the name of Donlon, it became very material for the defendant to show that no payments were made, other than in conformity with his theory of the case. A negative answer would have directly contradicted the plaintiff, and would have tended to show that the demand for payment was not based on any original obligation of the defendant. The same reasoning applies to the exclusion of the following question propounded to defendant's partner, who was present when McShane demanded payment under the second order: "And did Heilner ever promise to pay it to him [McShane], and put him off?" To a similar inquiry McShane had given an affirmative answer. It is elementary that the defendant should have been allowed to contradict him.

It was sought, both on the direct examination of the defendant and on the cross-examination of Grote, to show the prejudice of the latter, arising out of disagreements, and manifested by threats to sue. It was the defendant's right to attack Grote's credibility by proving his bias; and, while the extent of that inquiry is within the sound discre-

tion of the trial justice, it is error, as in this instance, to bar all interrogation on the subject.    Richardson v. Northrup, 66 Barb. 85; Schultz v. Railroad Co., 89 N. Y. 242.

In view of the fact that there must be a new trial, it becomes unnecessary to consider in further detail the numerous other exceptions urged by the appellant.    The judgment must be reversed.

Judgment reversed, and a new trial ordered, with costs to the appellant to abide the event.    All concur.