# SUPREME COURT.

CORNELIUS W. VAN VOORHIS, grantor of CHARLES FREEMONT
WILLIS, agt. JOSEPH J. KELLY *et al.*

*Obstruction to title — Grantee of lands held adversely may maintain action in
name of grantor — Execution — When leave to issue must be obtained.*

A deed of lands held in adverse possession, is void as against the party in
possession, and an action will lie against him in the name of the grantor
notwithstanding such deed.

Under section 284 of the Code of Procedure, an execution issued after
the lapse of five years from the entry of judgment, without leave of
the court, is irregular, and should be vacated. The law supposes the
judgment to be unpaid for five years. After that time it presumes
payment, and requires the plaintiff to show by proof that the judgment,
either in whole or in part, is still unpaid.

*Special Term, May,* 1883.

IT appears that on June 8, 1836, Cornelius W. Van Voorhis,
the plaintiff, was seized and possessed in fee of two certain
lots of land in the city of New York, on the east side of
Fifth avenue, commencing twenty-five feet two inches south
of Ninetieth street, and being each twenty-five feet two inches
wide, front and rear, and 102 feet two inches in depth.

On April 1, 1851, Ellis S. Mills, as executrix, recovered a
judgment in the marine court of the city of New York,
against Van Voorhis, for fifty-seven dollars and forty-three
cents, a transcript of which was filed in the office of the clerk
of said city and county, August 2, 1851.

About the year 1858, Elizabeth Tinker, who owned an
adjoining lot, took possession, as the defendants insist, of the
premises in question, inclosed the same, and subsequently
paid the taxes and assessments imposed thereon and claimed
to hold the same adversely to the plaintiff. She also obtained
an assignment of the Mills judgment, and on August 30,
1867, issued an execution thereon, out of the court of com-
mon pleas of the said city and county, whereby all the right,

title and interest which Van Voorhis had in said premises on the 2d day of August 1851, was sold. This execution, though required to be returned within sixty days after its receipt by the sheriff to the clerk of the court from which it was issued, was not in reality returned or filed until December 7, 1880.

In the meantime a sale was made, under the execution, of Van Voorhis' interest in the premises, and the same was conveyed to Elizabeth Tinker by the sheriff, by deed dated January 22, 1869.

On April 20, 1881, Van Voorhis conveyed the premises to Charles Freemont Willis, and this action is brought against the heirs-at-law and devisees of Elizabeth Tinker, in pursuance of section 1501 of the Code of Civil Procedure, to set aside all proceedings under the execution and sale, to recover possession of the property and for an accounting.

*Wheeler H. Peckham* and *William Settle,* for plaintiff.

*Theron G. Strong* and *John Townsend,* for defendants.

LARREMORE, *J.* — As to plaintiff's right to maintain this action, I must follow the decision of the learned justice who overruled the demurrer interposed to the complaint, and hold that the suit is well brought in the name of Van Voorhis (*Hamilton* agt. *Wright,* 37 *N. Y.,* 502; *Lowber* agt. *Kelly,* 9 *Bosw.,* 494).

The only equitable relief that the plaintiff can ask on this trial is the setting aside of the proceedings and sale under the Mills judgment. The ultimate recovery of the land in dispute must be had under the rules and practice governing an action of ejectment, and upon that issue the defendants are entitled to a trial by jury.

It is, therefore, only necessary to consider that branch of the case which is properly cognizable by a court of equity — viz., the alleged fraudulent proceedings under the judgment referred to, as an obstruction to plaintiff's title.

An attempt was made to show that an execution had been

---

Van Voorhis agt. Kelly *et al.*

---

issued from the marine court upon this judgment within five years from its rendition. There is no record evidence of this fact, and the oral testimony offered is both unsatisfactory and unreliable. But if it were true it fails to meet the requirements of section 284 of the Code of Procedure, which contemplates that such an execution should be issued in conformity with the practice of the court from which leave to issue the same upon such judgment might have been granted.

On August 2, 1851, it became a judgment of the court of common pleas of the city and county of New York for the purpose of enforcement.

On August 30, 1867, an execution was issued upon it without leave of that court or knowledge of the judgment debtor whereby his title is sought to be divested.

As a judgment of the marine court it was not a lien upon the real estate of the plaintiff. As a judgment of the court of common pleas it was subjected to its rules and practice. Without leave of that court, as above stated, an execution was issued upon it and proceedings had which resulted in the sale under which Mrs. Tinker and her devisees claim title. She knew that Van Voorhis was the owner of the record title to the premises, and her attorney testified that the execution sale was to make a title to the lots. Is such a transaction consistent with good faith and fair dealing?

It was held by judge INGRAHAM, in *Field* agt. *Paulding* (3 *Abb. Pr.*, 139), that under section 284 of the Code of Procedure an execution issued after a lapse of five years from the entry of a judgment, without leave of the court, was irregular and should be vacated ; that "the law supposes the judgment to be unpaid for five years. After that time it presumes payment and requires the plaintiff to show by proof that the judgment either in whole or in part is still unpaid."

Granting that a sale under such an execution was voidable only (*Wallace* agt. *Swinton*, 64 *N. Y.*, 193) the question of laches appears to be evenly divided between a judgment debtor, without notice of the execution and sale, and a judg-

ment creditor and her assignee who slept upon her rights for sixteen years and then sought to enforce a specific lien against the debtor's property.

In this connection the gross inadequacy of value becomes important, and coupled with the motive that induced the sale establishes a presumption of constructive fraud.

Van Voorhis testified that at the time such execution was issued he had sufficient personal property to satisfy the judgment. His interest in the premises, at that time variously estimated from $17,000 to $25,000, was sold for $150. The execution was not returned or filed until more than thirteen years after it was issued.

Under all the circumstances disclosed by the evidence the plaintiff cannot be convicted of laches and he is entitled to judgment setting aside the execution and sale, but issues must be settled and tried by a jury as to the possessory title claimed by the defendants, and if that is found in plaintiff's favor an accounting may then be had as to the moneys due for use and occupation and the payments made for taxes and assessments.

As the plaintiff is entitled to some equitable relief the action must be retained for that purpose (*Sternberger* agt. *McGovern*, 56 *N. Y.*, 12).

When the question of the title by possession is disposed of this court will finally adjudicate upon the rights and interests of the parties.